OPINION
Defendant-appellant Auto Specialties of Canton appeals the April 17, 2001 Judgment Entry of the Canton Municipal Court which entered judgment against it in the amount of $2,241.76. Plaintiff-appellee is Gregory D. Jackson.
 STATEMENT OF THE CASE AND FACTS
Appellee's wife, Kimberly Jackson, is the owner of a 1994 Buick Regal. Although the vehicle was titled in Mrs. Jackson's name, appellee drove and maintained the car. In November of 2000, appellee noticed a slight oil leak. After finding appellant's name in the phonebook, appellee called and scheduled service on the car for November 15, 2000. At that time, appellant told appellee he believed the "crank shaft seal" was defective. Appellee also left a gasket set with appellant to be used in repair of the vehicle.
After examining the vehicle, appellant told appellee the oil leak was around the oil pump housing and, therefore, it would be necessary to replace the gaskets. Appellee authorized appellant to complete the repairs. On November 17, 2000, appellee paid $285.99 for the replacement of the oil pump housing gasket, and picked up the car. Shortly after appellee picked up the vehicle, it would not start. Appellee called appellant and was directed to tighten up the battery post. This brief repair corrected the power problem. Appellee also noticed antifreeze leaking from the vehicle, and appellant directed appellee to return the vehicle for further repairs.
The next day, Saturday, November 18, 2000, while appellee was driving to work, the car "shut off" while appellee was traveling on St. Rt. 76. Appellee had the vehicle towed back to appellant's repair facility.
Appellant examined the vehicle and determined a piece of material had worked its way into the "check valve." This material caused the "check valve" to become stuck, subsequently depriving the engine of oil. This oil deprivation destroyed the engine. Appellant informed appellee it was not responsible for the damage to the vehicle. Appellee had the car towed from appellant's lot to Waikem Motors for a second opinion on the damage.
At trial, appellee testified the first time he took his vehicle to appellant's business, there was nothing wrong with his engine. After the engine seized on November 18, 2000, appellee took the vehicle back to appellant. Appellant removed numerous parts from the vehicle when conducting its diagnostic examination. However, when appellee requested a second opinion from Waikem, appellant did not reassemble the vehicle. At trial, appellee testified a mechanic named Derrick told him all of the parts removed from the vehicle after appellant's examination were put in a box on the front seat.
Michael Bennett, a mechanic with Waikem Motors, also testified at trial. Mr. Bennett testified the "pick up tube" was missing from the parts. Apparently if a pick up tube is not placed on a vehicle, the engine would be starved of oil and subsequently destroyed. Mr. Bennett also found a piece of gasket in the bypass valve which is located in the oil filter adapter.
Appellee subsequently purchased a new engine from Jim Pace Pontiac, Inc. for $1,947.95. Waikem motors installed the engine and made further repairs to the automobile in the amount of $1,964.09.
On January 17, 2001, appellee filed a small claims complaint alleging appellee incorrectly reassembled the oil pump, causing fatal engine damage, towing charges, and rental car costs. On February 14, 2001, the case was transferred to the regular docket. On February 22, 2001, appellant filed its answer and counterclaim. The counterclaim alleged appellee owed $437 for repairs performed, appellee breached the repair contract by surreptitiously taking the vehicle without paying for the repairs, and conversion. On March 13, 2001, appellee filed an amended complaint alleging a violation of the Ohio Consumers Sales Practices Act, breach of contract, breach of an express warranty, and breach of an implied warranty of fitness for a particular purpose. The matter proceeded to a bench trial on April 11, 2001. In an April 17, 2001 Judgment entry, the trial court found in favor of appellee and against appellant in the amount of $2,241.76, plus costs and interest at the rate of 10% from the date of judgment.
It is from the April 17, 2001 Judgment Entry appellant prosecutes this appeal, assigning the following as error:
1. WEIGHT OF THE EVIDENCE.
 A. THE TRIAL COURT ERRED IN OVERRULING DEFENDANT-APPELLANT'S MOTION FOR DIRECTED VERDICT BASED ON THE FAILURE BY THE PLAINTIFF-APPELLEE TO MEET HIS BURDEN OF PROOF IN HIS CASE IN CHIEF.
 B. THE JUDGMENT WAS NOT SUPPORTED BY THE WEIGHT OF THE EVIDENCE PRODUCED AT TRIAL.
 2. THE TRIAL COURT ERRED WHEN IT DID NOT STRIKE THE AMENDED COMPLAINT (FILED MARCH 13, 2001) FROM THE RECORD AND BY ALLOWING PLAINTIFF-APPELLEE TO PROCEED AT TRIAL ON THE AMENDED COMPLAINT WHICH HAD NOT BEEN SERVED IN ACCORDANCE WITH RULE 5(B) AND (D) OF THE OHIO RULES OF CIVIL PROCEDURE.
 3. THE TRIAL COURT ERRED BY ALLOWING PLAINTIFF-APPELLEE TO PROCEED WHEN HE DID NOT HAVE LEGAL TITLE TO THE MOTOR VEHICLE IN QUESTION.
 I
In his first assignment of error, appellant maintains the trial court erred in overruling its motion for a directed verdict as appellee failed to meet his burden of proof. Further, appellant maintains the trial court's final judgment was unsupported by the manifest weight of the evidence. We disagree.
Civ.R. 41 governs motions for dismissal in non-jury trials. The rule provides, in relevant part:
(B) Involuntary dismissal: effect thereof
* * *
 (2) Dismissal; non-jury action. After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52 if requested to do so by any party.
We are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment.[1] Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.[2]
Appellee testified although he noticed an oil leak, there was nothing wrong with the engine before he took the vehicle to appellant for repairs. Further, the vehicle seized up one day after appellant completed the repairs in question. Mr. Bennett testified parts were missing from the vehicle which could have caused the engine seizure. Further, Mr. Bennett found a piece of gasket in a location which also could have caused the oil deprivation which caused the engine to seize. Based upon this evidence, and the inferences which may be drawn therefrom, we find no error in the trial court's decision appellee demonstrated a right to relief based upon the facts and the law. Further, we find the same provided sufficient, competent, credible evidence to support the trial court's judgment and therefore do not find it to have been against the manifest weight of the evidence.
Accordingly, appellant's first assignment of error is overruled.
 II
In his second assignment of error, appellant maintains the trial court erred in failing to strike the amended complaint which was filed in violation of Civ. R. 5. We disagree.
Civ. R. 5 states, in relevant part:
(B) Service: how made
 Whenever under these rules service is required or permitted to be made upon a party who is represented by an attorney of record in the proceedings, the service shall be made upon the attorney unless service upon the party is ordered by the court. Service upon the attorney or party shall be made by delivering a copy to the person to be served, transmitting it to the office of the person to be served by facsimile transmission, mailing it to the last known address of the person to be served or, if no address is known, leaving it with the clerk of the court. The served copy shall be accompanied by a completed copy of the proof of service required by division (D) of this rule. "Delivering a copy" within this rule means: handing it to the attorney or party; leaving it at the office of the person to be served with a clerk or other person in charge; if there is no one in charge, leaving it in a conspicuous place in the office; or, if the office is closed or the person to be served has no office, leaving it at the dwelling house or usual place of abode of the person to be served with some person of suitable age and discretion then residing in the dwelling house or usual place of abode. Service by mail is complete upon mailing. Service by facsimile transmission is complete upon transmission.
* * *
(D) Filing
 * * * Papers filed with the court shall not be considered until proof of service is endorsed thereon or separately filed. The proof of service shall state the date and manner of service and shall be signed in accordance with Civ. R. 11.
Civ. R. 5 protects the due process right of the litigants by assuring notice of pleadings and motions to the parties.[3] However, in the matter sub judice, appellant brings the lack of proper service to the trial court's attention, and then agrees to proceed and participate in the trial, notwithstanding the lack of service:
 BY THE COURT: This is Case 2001CVF425, Gregory D. Jackson, Plaintiff v. Auto Specialties of Canton, Inc., Defendants. The record will show that we are here on the amended complaint of the Plaintiff, filed March 13th, 2001.
 BY MR. CRAWFORD: Excuse me, Your Honor, I've not been served with a copy of the amended complaint.
 BY THE COURT: And we're here on the answer and counterclaim of the Defendant, filed February 22d 2001. All right.
BY MR. CRAWFORD: Thank you, Your Honor.
 BY THE COURT: Before we go to the issue Mr. Crawford raised, I'd like you both to identify yourself for the record.
 BY MS. BURICK: Attorney Elizabeth Burick for the Plaintiff, Gregory Jackson.
 BY MR. CRAWFORD: G. Ian Crawford Attorney for the Defendant, Auto Specialties of Canton., Inc.
BY THE COURT: Okay, Miss Burick.
BY MS. BURICK: Yes, Your Honor.
 BY THE COURT: Mr. Crawford says he has not received a copy of the amended complaint.
 BY MS. BURICK: Your Honor, I assumed that Mr. Crawford received the amended complaint, and we also asked the clerk to serve his client, the Defendant, by certified mail, when it was filed on March 13th.
 BY MR. CRAWFORD: Your Honor, under Civil Rule 5, I think the amended complaint should have been served on me. It's inappropriate to serve it on my client after proceedings have begun and she knows as an attorney, I've entered an appearance on behalf of the party. The question — I don't believe there's a certification there that she sent it to me, as I've also required.
 BY MS. BURICK: I believe you can serve it on the Defendant, also.
 BY THE COURT: You know, I believe that we can go round and round and round here. Okay, you're both good attorneys and I'd really love to hear this case and not the little fight, but I'll tell you what., Mr. Crawford and Miss Burick, if you want a continuance I'll go get my trial book and then you can have a couple weeks continuance, this is my oldest civil case, and we can come back and try it in a couple weeks, I don't care one way or the other, but I'm going to allow her to amend her complaint, you're an officer of the court, I believe you when you say you haven't seen it —
 BY MR. CRAWFORD: I didn't say I haven't seen it, Judge, I said I haven't been served with it and also this is in violation of Civil Rule 5, and to serve it directly on my client I believe is also a violation of the ethical considerations under the code of professional responsibility, and the appropriate remedy would be to quash the amended complaint, that's my point for the record.
 BY THE COURT: Okay, so what do you want? I'm not going to quash the amended complaint, I'll give you a continuance so you can get ready for this case if you're saying you're not ready, or we can hear the trial today.
 BY MR. CRAWFORD: Your Honor, just as long as I get a note of objection on the record, we'll go ahead and proceed today.[4]
The trial court provided counsel with the an opportunity to continue the case to prepare a defense to the amended complaint. However, counsel for appellant chose to proceed with the trial. Accordingly, we find any potential error in appellee's failure to properly serve the amended complaint upon appellant to be waived.
Appellant's second assignment of error is overruled.
 III
In appellant's third assignment of error, it maintains the trial court erred in permitting appellee to proceed as a litigant when appellant was not the owner of the vehicle in question. Specifically, appellant points to R.C. 4505.04 to support its conclusion appellee had no standing to raise the claims set forth.
R.C. 4505.04 states, in pertinent part:
* * *
 (B) Subject to division (C) of this section, no court shall recognize the right, title, claim, or interest of any person in or to any motor vehicle sold or disposed of, or mortgaged or encumbered, unless evidenced:
(1) By a certificate of title * * *
 (2) By admission in the pleadings or stipulation of the parties;
 (3) * * * by an instrument showing a valid security interest.
We agree Mrs. Jackson was the legal title owner of the car. However, both the complaint and the amended complaint state causes of action for breaches of expressed and implied warranties, breach of contract, and a violation of the Ohio Consumer Sales Practices Act. Because appellee was the only person with whom appellant entered into a contract for services, and because appellee testified he paid for the repairs to the vehicle, we find him to be the real party in interest, and a proper party to this lawsuit.
Appellant first raised this issue at the close of appellee's case, but appellant also presented evidence on its own counterclaim. As noted above, appellant's counterclaim sought judgment on the repair contract against appellee, Mr. Jackson. Because the real issues before this Court surround the contract for repair between Mr. Jackson and appellant, we find no error in the trial court's decision to enter judgment in appellee's favor.
Appellant's third assignment of error is overruled.
JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Canton Municipal Court is affirmed. Costs assessed to appellant.
Hon. Julie A. Edwards, P.J. Hon. William B. Hoffman, J. Hon. John F. Boggins, J. concur.
[1] Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, unreported.
[2] C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279.
[3] See, Ohio Valley Radiology Associates, Inc. v. Ohio Valley Hosp.Ass'n (1986), 28 Ohio St.3d 118, (holding due process requires that some reasonable notice, constructive or otherwise, be given; a judgment based on a trial of which a party had not notice, and in which it did not participate, must be vacated.; Davis v. Alex Elias Leasing (Feb. 3, 1995), Mahoning App. No. 93CA70, unreported; (holding the grant of Civ. R. 60(B) motion seeking relief from judgment filed on the same day and time violates the opposing party's due process rights as no service is made pursuant to Civ. R. 5(A) and such party does not have an opportunity to object to the motion filed.).
[4] Tr. at 406.